**Affirmed and Memorandum Opinion filed April 18, 2024.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-21-00585-CR

---

### ALBERT  JAMES TURNER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 10-DCR-054233**

---

### MEMORANDUM  OPINION

On remand from the Court of Criminal Appeals, *see Turner v. State*, 570 S.W.3d 250 (Tex. Crim. App. 2018), appellant was retried for the capital murder of his wife and mother-in-law.  *See* Tex. Penal Code § 19.03(a)(7)(A).  A jury found him guilty, and the court sentenced him to the mandatory term of confinement for life without parole.  *See* Tex. Penal Code § 12.31(a)(2).  Appellant challenges his conviction in nine issues, contending that his trial counsel rendered ineffective assistance, that he was denied counsel during the time period for filing a motion for

new trial, and that the trial court erred by allowing voir dire to proceed in his absence, denying his request for self-representation, refusing to submit lesser-included offenses in the jury charge, and failing to give a limiting instruction regarding a reference to appellant's first trial. We affirm.

## I. BACKGROUND

Appellant does not challenge the sufficiency of the evidence, so we do not recite it in detail. The jury heard a recording of a 911 call from around midnight on December 27, 2009. The caller was appellant's then-twelve-year-old daughter. During the call, she identified appellant as having choked and stabbed her mother and grandmother. The grandmother died at the scene, and the mother was dead by the time she was brought to a hospital. The daughter testified at trial that appellant stabbed her mother and grandmother.

Appellant's son, who was eleven years old at the time of the murders, testified that he heard his mother screaming and then saw appellant walking away from the mother's room carrying a knife and looking angry. The son heard his grandmother screaming and appellant telling her to shut up. The son went to his mother's room and saw her on her knees, bleeding, and screaming that she couldn't breathe. When the son saw his grandmother, there was blood everywhere.

Another of appellant's daughters, who was five or six years old at the time of the murders, testified that appellant was the man inside the house when the mother and grandmother were murdered.

Appellant testified that he didn't do it, that his children misidentified him, and that the State coerced his children into lying at trial. The jury found him guilty.

## II.    PRESENCE DURING VOIR DIRE

In his first issue, appellant contends that the trial court violated his constitutional and statutory rights to be present during part of voir dire when appellant was removed from the courtroom at his lawyer's request.  We hold that appellant has not shown error based on this record; regardless, any error was invited.

### A.    The Incident

As appellant notes in his brief, the morning of voir dire began with a discussion about the "daunting logistics of ensuring Appellant's presence in the courtroom" because he did not want to come to court and wear appropriate attire.  After these matters were sorted out and voir dire began, appellant "rose from his seat[] and attacked his lawyers."

The court held a bench conference and excused the potential jurors while the matter was resolved.  Appellant's trial counsel said on the record that appellant "attempted to get out of the chair and come at me."  Appellant was "coming at me with violence, in my opinion," and he, "came at [co-counsel] with violence, and is being disruptive to the court."  The court acknowledged that it was "able to see the potential for violence there, as Mr. Turner lunged out of his chair and towards his counsel.  In addition, the Court will note that Mr. Turner threw a garbage can, a trash can, because his hands were not secured to the chair."

Counsel made the following request, to which the State agreed:

> So at this time, I'm going to propose that he be handcuffed to the chair, that he be separated, just by—just outside of the room where he can hear the proceedings and observe by hearing, but not be present sitting next to me.  Basically justifying the fact that he can hear and observe the proceedings and not be excluded.  I want him to be included.  I just don't want him to be excluded.  But we can't do it any

3

more safely, in my opinion, with him being present sitting next to counsel at counsel table.

The court granted counsel's request and agreed to continue voir dire with appellant "in the hallway, as counsel has requested." The court said, "We'll put him right there in front of the open doorway, so he can hear." After appellant was repositioned, the court asked counsel to view how appellant was secured. The following exchange occurred while discussing appellant's positioning:

| | |
|---|---|
| Counsel: | On the other side. |
| The Court: | Yeah, to the side, so he can't—so he needs to be on the side. |
| Counsel: | Sitting in the doorway. |
| The Court: | How is he going to hear? |
| Counsel: | The jurors are sitting or something. |
| The Court: | Right to the side. Inside the court. |
| Counsel: | No, outside. |
| The Court: | Outside. Okay. |
| Counsel: | We'll have the door open. |
| The Court: | All right. |
| Counsel: | Sounds good. |

Voir dire continued with appellant sitting outside of the courtroom, although appellant was brought into the courtroom to take his plea before the jury was seated. The record reflects several breaks in the proceeding while the attorneys discussed strikes and challenges. On the following day, and for the remainder of trial, appellant was inside the courtroom.

## B. No Error

A defendant in Texas has constitutional and statutory rights to be present during trial. *See* Tex. Code Crim. Proc. art. 33.03; *Miller v. State*, 692 S.W.2d 88,

4

90 (Tex. Crim. App. 1985) (recognizing rights under the federal and Texas constitutions). The statute provides there is a presumption of the defendant's presence "in the absence of all evidence in the record to the contrary." Tex. Code Crim. Proc. art. 33.03.

Generally, it is an appellant's "burden to present a record showing properly preserved, reversible error." *Word v. State*, 206 S.W.3d 646, 651–52 (Tex. Crim. App. 2006); *see also Ortiz v. State*, 144 S.W.3d 225, 230 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (en banc) (noting an appellant's "burden of presenting a record to show error requiring reversal insofar as he is required to *develop* the record to show the nature and source of an error and, in some cases, its prejudice to him").

As appellant notes in his brief and reply brief, it is not clear from this record whether appellant could hear and see the proceedings, though much discussion was had about appellant's ability to hear the proceedings. The record suggests that appellant was outside the courtroom during voir dire, but the court said appellant was "in front of the open doorway." Counsel said appellant was "[s]itting in the doorway."

Based on this record, we cannot conclude that appellant was not "present" during voir dire under the constitutional or statutory rights to be present. *See Nelson v. State*, 99 Tex. Crim. 564, 565–66 (1925) (applying predecessor statute to a complaint that the defendant had been absent from the courtroom during some of the proceedings, and concluding, "If he was standing just outside the courtroom door, which was shown to have been within easy hearing distance of the jury, by the testimony, so that he could hear what was going on, this would have substantially complied with the law."). The record does not affirmatively show that appellant was unable to participate in the proceedings and communicate with

5

counsel about peremptory strikes if he so desired. *Cf. Hughes v. State*, 651 S.W.3d 461, 470 & n.5 (Tex. App.—Houston [14th Dist.] 2022, pet. granted) (holding that the defendant was not present when he participated in the hearing only by video conferencing, and he was muted several times by the trial court "without the possibility to speak to his counsel").

Based on this record, appellant has not shown error.

## C. Invited Error

Even assuming that appellant was not present during voir dire, and that he did not waive his rights due to his conduct of attempting to attack his counsel,[1] he invited any error when the trial court placed appellant exactly where his counsel requested.

"The doctrine of invited error is properly though of, not as a species of waiver, but as estoppel." *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999). Under the doctrine, a party cannot complain about an action they requested. *See id.* at 531–32.

The Court of Criminal Appeals has applied this doctrine when a defendant waived his right to be present for part of voir dire and opposed the State's motion to quash the venire. *See Garcia v. State*, 919 S.W.2d 370, 393–94 (Tex. Crim. App. 1994). A defendant "may not, by his own actions, create reversible error." *Id.* at 393. Because the trial court did what the defendant asked, the defendant was

---

[1] *See generally Illinois v. Allen*, 397 U.S. 337, 342–43 (1970) (discussing waiver of the Sixth Amendment right to be present "by consent or at times even by misconduct" (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934))). *Compare Miller v. State*, 692 S.W.2d 88, 91 (Tex. Crim. App. 1985) (reasoning that Article 33.03 is a "more protective provision than its federal counterpart" because the defendant's right to be present at trial is "unwaivable until such a time as the jury 'has been selected'" (quoting Tex. Code Crim. Proc. art. 33.03)), *with Garcia v. State*, 919 S.W.2d 370, 393–94 (Tex. Crim. App. 1994) (holding that the defendant "affirmatively waived his right to be present" under Article 33.03 during part of voir dire, and he "was not denied his right to be present—he waived it").

6

not denied his right to be present, and there was no violation of Article 33.03. *See id.* at 394.

Here, the trial court did not deny appellant a right to be present but instead granted counsel's request for appellant to sit outside of the courtroom in such a way that appellant would be able to hear and observe voir dire—to be included and not excluded from participating in voir dire, according to counsel's request. Appellant cannot now claim error based on the trial court's actions that he requested. *See Garcia*, 919 S.W.2d at 393–94.

Appellant's first issue is overruled.

## III. SELF-REPRESENTATION

In his fourth issue,[2] appellant contends that the trial court erred by denying his midtrial request for self-representation.

Under binding precedent from the Court of Criminal Appeals, "An accused's right to self-representation must be asserted in a timely manner, namely, before the jury is impaneled." *McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997). A request for self-representation asserted after the jury has been impaneled is untimely and properly overruled. *See id.*

Appellant concedes in his brief, and the record shows, that he "did not assert his right to self-representation until a jury had been seated and the trial had commenced." Under *McDuff*, the trial court did not err by denying this request. *See id.*

Appellant's fourth issue is overruled.

---

[2] We address appellant's issues out of order so that we may review his issues based on ineffective assistance together in Part VII of this opinion.

## IV.  LESSER-INCLUDED OFFENSES

In his sixth issue, appellant contends that the trial court erred by denying his requested instructions on the lesser-included offenses of aggravated assault and murder.

A defendant is entitled to an instruction on a lesser-included offense only if (1) the requested lesser offense is in fact a lesser-included offense of the charged offense; and (2) there is some evidence in the record that would permit the jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense.  *Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023).  Under the first prong, an offense is a lesser-included offense if it is within the proof necessary to establish the offense charged.  *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016).  Under the second prong, it is not enough that the jury may disbelieve crucial evidence of guilt pertaining to the greater offense; rather, there must be some evidence directly germane to the lesser-included offense for the fact finder to consider before an instruction on the lesser-included offense is warranted.  *Ransier*, 670 S.W.3d at 650.  "Unless the evidence presented is subject to different interpretations consistent with either the greater or lesser-included offenses, evidence directly germane to a lesser-included offense exists only if there is 'affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense.'"  *Id.* (quoting *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012)).

### A.    Aggravated Assault

Appellant contends that a lesser-included instruction for aggravated assault was warranted because the injuries to his wife were "less immediately severe" than those suffered by his mother-in-law.  He contends that if the jury had found that

appellant did not intentionally kill his wife, then the jury could have found appellant guilty only of the lesser-included offense.

"A murder defendant is not entitled to an instruction on the lesser included offense of aggravated assault when the evidence showed him, at the least, to be guilty of a homicide." *Jackson v. State*, 992 S.W.2d 469, 475 (Tex. Crim. App. 1999). Appellant points to no evidence that his wife did not die from the injuries he inflicted. Thus, appellant was not entitled to an instruction on the lesser-included offense of aggravated assault. *See id.* (no error to deny instruction for aggravated assault when there was "no evidence from which a rational jury could conclude that appellant did other than cause the death of the victim").

## B. Murder

At trial, appellant argued for a murder instruction because "it could be argued that these are two separate transactions, two separate incidents, that would require to separate out the charge and to submit a charge of murder, lesser included offense of murder, as to each victim in the case." On appeal, appellant contends that he was entitled to the murder instruction because there is evidence that appellant did not intend to cause the death of his wife (i.e., murder under Section 19.02(b)(1)), and instead only intended to cause serious bodily injury (i.e., murder under Section 19.02(b)(2)).

### 1. *No Preservation*

Appellant's argument at trial does not comport with his argument on appeal, so no error is preserved. *See, e.g.*, *Pena v. State*, 285 S.W.3d 459, 463–64 (Tex. Crim. App. 2009) ("The complaining party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of law as well as the underlying rationale. . . . Whether a party's

9

particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."); *see also Newman v. State*, No. 14-05-01125-CR, 2007 WL 1437624, at \*4 (Tex. App.—Houston [14th Dist.] May 17, 2007, pet. ref'd) (mem. op., not designated for publication) ("Appellant's rationale for the requested instruction differs substantially and does not comport with the rationale for his request at trial.  Because appellant's argument on appeal does not comport with his objection at trial, his complaint is not preserved for review.").

### 2.    *No Error*

Assuming without deciding that both murders alleged for the purpose of capital murder under Section 19.03(a)(7)(A) must be intentional or knowing murders under Section 19.02(b)(1),[3] there is no evidence in this record that would permit a jury to rationally find that if appellant is guilty, he is guilty only of the lesser-included offense under Section 19.02(b)(2) based on the fact that it took more time for appellant's wife to die compared to his mother-in-law.  The medical examiner testified that a knife was brought across the wife's neck and incised the soft tissue, muscle, airways, and blood vessels; there was a "complete transection, or cutting" of the strap muscles in her neck and her trachea.  The wound was about two inches deep.  The incision would have required "a significant amount of deliberate force."  It was a "very strong one, straight across the neck."

---

[3] The capital murder statute provides that a person commits an offense if the person "commits murder as defined under Section 19.02(b)(1) and . . . the person murders more than one person . . . during the same criminal transaction."  Tex. Penal Code § 19.03(a)(7)(A). Appellant's argument appears to assume that both murders used to support a capital murder charge must be intentional or knowing murders under Section 19.02(b)(1).  *Compare Ex parte Milner*, 394 S.W.3d 502, 508 (Tex. Crim. App. 2013) (addressing allowable unit of prosecution under Section 19.03(a)(7) and reasoning that the State must prove that a defendant committed at least two murders: "an intentional murder under section 19.02(b)(1) and at least one additional murder as the aggravating circumstance," without specifying that the second murder must be one under Section 19.02(b)(1)), *with Roberts v. State*, 273 S.W.3d 322, 331 n.11 (Tex. Crim. App. 2008) (noting without analysis that capital murder "requires intentional and knowing murder for each victim," i.e., murder under Section 19.02(b)(1)).

When emergency medical personnel arrived at the scene, the wife was still alive, so she was brought to a hospital. By the time she arrived at the hospital, however, she was "basically dead." She had no blood pressure, no heart rate, and no spontaneous respiration.

Appellant testified that he was not present during the murders. Thus, he did not testify in a manner that would enable to the jury to infer that appellant (1) lacked an intent or knowledge to kill his wife but also (2) intended to cause serious bodily injury.

The evidence concerning the nature of the wife's injuries is not subject to different interpretations such that a jury could rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense of murder under Section 19.02(b)(2). Nor is there affirmative evidence that both raises murder under Section 19.02(b)(2) and rebuts or negates capital murder based on two intentional or knowing murders under Section 19.02(b)(1).

Appellant's sixth issue is overruled.

## V.   LIMITING INSTRUCTION

In his seventh issue, appellant contends that the trial court erred by failing to sua sponte include a limiting instruction in the jury charge pursuant to Rule 21.9(d) of the Texas Rules of Appellate Procedure.

The trial court must give the jury a written charge setting forth the law applicable to the case. Tex. Code Crim. Proc. art. 36.14. Rule 21.9(d), regarding motions for new trials in criminal cases, provides:

> A finding or verdict of guilt in the former trial must not be regarded as a presumption of guilt, nor may it be alluded to in the presence of the jury that hears the case on retrial of guilt. A finding of fact or an

11

assessment of punishment in the former trial may not be alluded to in the presence of the jury that hears the case on retrial of punishment.

Tex. R. App. P. 21.9(d).

Appellant contends that the trial court should have sua sponte admonished the jury that a prior conviction could not be considered as a presumption of guilt because appellant referred to his prior trial and prior testimony when he testified in front of the jury. Appellant does not direct this court to any reference in front of the jury regarding a "finding or verdict of ***guilt*** in the former trial." *See id.* (emphasis added). Rather, appellant merely referred to a prior trial and testimony. While appellant was being cross-examined and provided transcripts of his earlier testimony to refresh his recollection, appellant appeared to ask for the jury to see the transcript: "Why are y'all doing this with the—show the transcript, and let them see the transcript of the kids." When the court announced it would take a short break so appellant could review the transcript, appellant referred to an earlier bench hearing about the children's inconsistent statements and said, "I know what that does on death row. When y'all do that bench hearing stuff with evidence like that, it gets people killed." On appeal, appellant contends that the reference to death row "could have led a reasonable juror to infer that Appellant had, after his prior conviction, been housed on 'death row.'"

Assuming without deciding that Rule 21.9(d) could provide "law applicable to the case" for purposes of Article 36.14, and thus require a sua sponte jury instruction under different facts, it did not become law applicable to the case here because there was no reference to a finding or verdict of guilt in the former trial. *Cf. Barfield v. State*, 464 S.W.3d 67, 75–76 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (no ineffective assistance based on failure to object to testimony concerning a prior trial because Rule 21.9(d) "addresses references to a 'finding or

12

verdict of guilt' and does not address the admissibility of a mere reference to a prior trial"). Appellant's errant reference to "death row" in the context of a bench hearing to discuss or review prior statements would not have indicated to the jury that there had been a finding or verdict of guilt in the former trial. The trial court did not err by failing to sua sponte give an instruction under Rule 21.9(d).

Appellant's seventh issue is overruled.

## VI. DENIAL OF COUNSEL

In his eighth issue, appellant contends that he was denied the assistance of counsel during the time period for filing a motion for new trial. Appellant contends that he was denied counsel because trial counsel did not file a motion for new trial.[4] Appellant does not dispute, and the record shows, that trial counsel did not withdraw as counsel until after the time period for filing a motion for new trial had expired. In other words, counsel continued to represent appellant during the entire time period for filing a motion for new trial.

We must presume that trial counsel continued to adequately represent appellant during this time period. *See Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007). And we presume that no motion for new trial was filed because appellant, with the benefit of counsel's representation, considered and rejected the option. *See id.* at 911 n.6. Appellant has not rebutted these presumptions with evidence that he was not represented during the time period for filing a motion for new trial.

Appellant's eighth issue is overruled.

---

[4] To the extent appellant contends that he was denied counsel "because trial counsel did not provide effective representation" and because counsel "rendered ineffective assistance during the motion for new trial period," we address this complaint in Part VII of this opinion when addressing his other claims of ineffective assistance.

## VII. INEFFECTIVE ASSISTANCE

In his second, third, fifth, eighth, and ninth issues, appellant contends he was denied effective assistance of counsel based on various alleged deficiencies.

### A. Legal Principles

To prevail on a claim of ineffective assistance, an appellant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness and (2) counsel's deficiency caused the appellant prejudice—there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). An appellant must satisfy both prongs by a preponderance of the evidence. *Perez*, 310 S.W.3d at 893. Failure to demonstrate either deficient performance or prejudice will defeat the claim of ineffective assistance. *Id.*; *see also Strickland*, 466 U.S. at 697.

When a defendant asserts ineffective assistance of counsel for the first time on appeal, as here, the record often will not be sufficient to overcome the strong presumption that counsel's conduct was reasonable and professional. *See Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008). We will not find deficient performance unless counsel's conduct is so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

### B. Removal During Voir Dire

In his second issue, appellant contends that trial counsel was ineffective for requesting that appellant be removed from the courtroom during voir dire. The record is insufficient to overcome the presumption of reasonable and professional

conduct. Counsel might well have believed that appellant's placement inside the courtroom would do more harm than good, based on appellant's demonstrated disruptive and violent behavior in front of the potential jurors. We cannot conclude that counsel's conduct is so outrageous that no competent attorney would have done it.

In his reply brief on appeal, appellant adds a conflict-of-interest analysis to his claim of ineffective assistance. Because the test for ineffective assistance under *Strickland* differs from the test for a conflict-of-interest under *Cuyler v. Sullivan*, 466 U.S. 350 (1980),[5] we may properly decline to consider this new issue presented for the first time in a reply brief. *See Chambers v. State*, 580 S.W.3d 149, 161 (Tex. Crim. App. 2019).

Assuming the conflict-of-interest issue is subsumed by the ineffective assistance issue in the opening brief,[6] appellant must show that an actual conflict of interest adversely affected his counsel's performance. *Cuyler*, 466 U.S. at 350; *see also Acosta*, 233 S.W.3d at 355–56 (applying *Cuyler* when the conflict is based on counsel's own interest). Appellant suggests that counsel's personal interest in his own safety conflicted with appellant's right to be present during voir dire.

Based on this record, we cannot conclude that counsel's interest in his own safety adversely affected his performance. Appellant could have been physically restrained in the jury's presence, but counsel might well have acted in appellant's best interest by having him removed from the courtroom and out of the potential

---

[5] *See, e.g.*, *Acosta v. State*, 233 S.W.3d 349, 352–53, 355–56 (Tex. Crim. App. 2007) (noting difference between the two tests and reversing the court of appeal for applying the *Strickland* test instead of the *Cuyler* test).

[6] Under *Chambers*, "new issues raised in a reply brief should not be considered," but a court of appeals "can consider arguments and authorities in a reply brief that are related to arguments in the original brief." 580 S.W.3d at 161.

jurors' view. We presume, based on this record, that counsel's decision to have appellant removed from the courtroom instead of keeping him in the courtroom during voir dire was a strategic decision and not the result of any conflict of interest.

Appellant's second issue is overruled.

## C.     Failure to Move to Quash the Venire

In his third issue, appellant contends that counsel was ineffective for failing to ask the trial court to quash the venire after appellant's outburst.

The record is insufficient to overcome the presumption of reasonable and professional conduct. Appellant notes that, following appellant's outburst, nearly two dozen potential jurors admitted they could no longer follow the law and be fair and impartial. Yet, all of these potential jurors were struck for cause. Counsel might well have decided that the remaining potential jurors were ones that would be beneficial to appellant and provide him a fair trial. And, without "evidence that the venire, as a whole, was biased against appellant," counsel cannot be ineffective for failing to move to quash the venire. *See Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991). We cannot conclude, based on this record, that counsel's decision to not request a new venire was so outrageous that no competent attorney would have done it.

Appellant's third issue is overruled.

## D.     Failure to Object to Autopsy Reports and Testimony

In his fifth issue, appellant contends that counsel was ineffective for failing to object, based on the Confrontation Clause, to the admission of autopsy reports and the medical examiner's testimony because a different medical examiner had performed the autopsies.

16

By the time of appellant's second trial, the original medical examiner who performed the autopsies and created the reports was deceased. The original medical examiner had testified at appellant's first trial. A different medical examiner testified about the reports at appellant's second trial.

Under the Confrontation Clause of the Sixth Amendment, a testimonial statement is inadmissible "absent a showing that the declarant is presently unavailable and the defendant had a prior opportunity for cross-examination." *Wall v. State*, 184 S.W.3d 730, 734–35 (Tex. Crim. App. 2006).

Appellant concedes that the original medical examiner was unavailable to testify because he was deceased. Although he concedes that the original medical examiner was also subject to cross-examination at appellant's first trial, appellant contends that he was represented by new trial attorneys at the second trial and these new trial attorneys did not have a prior opportunity to cross-examine the original medical examiner. However, the Confrontation Clause "does not condition the use of prior testimony on representation by the same counsel at both trials." *Ellison v. State*, 494 S.W.3d 316, 324 (Tex. App.—Eastland 2015, pet. ref'd) (citing *United States v. Richardson*, 781 F.3d 237, 244 (5th Cir. 2015)). Thus, the original medical examiner's testimonial statements in the autopsy reports and testimony from the first trial were not inadmissible under the Confrontation Clause. *See Martinez v. State*, 327 S.W.3d 727, 737–38 (Tex. Crim. App. 2010) (authorizing the reading into the record of a deceased witness's prior testimony).[7]

---

[7] Appellant contends that this court has "already determined that such facts demonstrate a violation of the Appellant's right to confrontation," citing *Lee v. State*, 418 S.W.3d 892 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). In *Lee*, however, there was "no contention that [the medical examiner] was unavailable or that appellant had an opportunity to cross-examine her." *Id.* at 896. Here, it is undisputed that the witness was unavailable and subject to cross-examination in the first trial.

The record is insufficient to overcome the presumption of reasonable and professional conduct. Because the original medical examiner was deceased and had been cross-examined in the first trial, counsel might well have believed the autopsy reports and testimony about the reports were admissible. *See id.* And counsel might well have believed it was better to have a live witness—the new medical examiner, who would be subject to new cross-examination—rather than allow the reading of the testimony of the original medical examiner into evidence. On this record, we cannot conclude that counsel's decision to not object based on the Confrontation Clause was so outrageous that no competent attorney would have done it.

Appellant's fifth issue is overruled.

## E.     Failure to File a Motion for New Trial

In his eighth issue, appellant contends that counsel was ineffective during the motion for new trial stage because counsel failed to file a motion for new trial, asserting as grounds the error alleged on appeal in his first and fourth issues, discussed in Parts II and III of this opinion, regarding appellant's presence during voir dire and his request for self-representation.

As noted above, the trial court did not err regarding these issues; thus, the court would not have erred by denying a motion for new trial on these grounds. "Counsel is not required to engage in the filing of futile motions." *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Mooney*, 817 S.W.2d at 698). "[C]ounsel could have reasoned that filing a motion for new trial on this ground would have been futile." *Jackson v. State*, 495 S.W.3d 398, 418 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (rejecting ineffective assistance claim based on failure to file a motion for new trial).

Appellant's eighth issue is overruled.

## F. Failure to Withdraw Immediately After Sentencing

In his ninth issue, appellant contends that counsel was ineffective for failing to withdraw immediately following the pronouncement of appellant's sentence. Appellant cites performance guidelines that were adopted by the State Bar of Texas about a week after appellant was sentenced and published six months later, which recommend: "If trial counsel does not plan to represent the client post-trial, immediately file a motion to withdraw." *See Performance Guidelines for Non-Capital Criminal Defense Representation*, 85 Tex. B.J. 273, 289 (2022).

The record is insufficient to overcome the presumption that counsel's conduct was reasonable and professional. Counsel might well have planned to continue to represent appellant post-trial, which was appellant's right. *See Buntion v. Harmon*, 827 S.W.2d 945, 949 & n.4 (Tex. Crim. App. 1992) (error for trial court to replace appointed counsel based on the trial court's feelings, practice, experience, and preferences; reasoning that "once counsel is appointed, the trial judge is obliged to respect the attorney-client relationship created through appointment"). We cannot conclude that counsel's decision to not immediately withdraw at the time of sentencing was so outrageous that no competent attorney would have done it.

Appellant's ninth issue is overruled.

## VIII. CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/     Ken Wise
            Justice

Panel consists of Justices Wise, Bourliot, and Spain.

Do Not Publish — Tex. R. App. P. 47.2(b)