

# NUMBER 13-23-00255-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**EMILIANO ROSA ROSALES,**                                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                   **Appellee.**

## ON APPEAL FROM THE 377TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Longoria, Tijerina, and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Emiliano Rosa Rosales appeals his convictions for aggravated sexual assault of a child, a first-degree felony, *see* TEX. PENAL CODE ANN. § 22.021(a)(2)(B), and indecency with a child, a second-degree felony. *See id*. § 21.11(d). After returning a verdict of guilty, a jury sentenced Rosales to forty years' imprisonment as to count one

and twenty years as to count two, which sentences the trial court ordered to run consecutively. By two issues, Rosales argues that (1) the evidence was insufficient to support his convictions; and (2) the trial court abused its discretion in overruling defense counsel's hearsay objections. We affirm.

## I. BACKGROUND

Rosales was charged by indictment with one count of aggravated sexual assault of a child and one count of indecency with a child, both offenses committed against complainant Jane.[1] As to count one, the indictment alleged that on or about June 1, 2020, Rosales "did then and there intentionally and knowingly cause the sexual organ of [Jane], a child who was then and there younger than 14 years of age, to contact the mouth of [Rosales]." As to count two, the indictment alleged that on or about June 15, 2020, Rosales, "did then and there, with the intent to arouse or gratify the sexual desire of [Rosales], engage in sexual contact with [Jane], . . . by touching the genitals of [Jane], a child younger than 17 years of age."

A jury trial commenced on May 30, 2023, at which the following evidence was adduced. Jane's biological parents shared custody of her. Her biological father, John, lived with his wife Linda, and her biological mother Amy lived with Rosales, who Jane referred to as her "stepfather." Jane lived with Amy, Rosales, and Jane's siblings in a trailer home in Bloomington, Texas. Linda was the State's first witness and testified that on September 6, 2020, when Jane was "about to be 13," she came to her and John "and

---

[1] To protect the identity of the complainant, we refer to her and her relatives by fictitious names. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

she told us about the sexual abuse that she was having to deal with [involving Rosales]." Jane told them "that there w[ere] times where she was showering and [Rosales] was . . . touching her inappropriately." Linda testified that any abuse would have occurred while Amy was working, stating that Amy worked "[a]t the 7-Eleven across the street from the trailer houses." Linda testified that this was the only information that Jane provided her at that point in time. This conversation took place at around 4:00 a.m. The next day, Linda reached out to law enforcement. Shortly after law enforcement became involved, Linda's other daughter "found [Jane] laying on the restroom floor." Linda described that when she went into the restroom, "[Jane] is – is out of it; and all she's telling [her] is, [']Please don't let me go back. Please don't let me go back. They're just going to hurt me more.[']" Jane "didn't even know she was in [Linda's] restroom," "[s]he thought she was at the trailer with these individuals." Linda later learned that Jane had overdosed on Benadryl.

After being in the hospital for a few days, Jane was discharged and went to live with John and Linda. At this time, Jane started participating in remote counseling sessions with Meagen Gumm of Hope of South Texas. However, Linda testified that Jane "could not" complete counseling because the abuse "was a very sensitive subject." Linda testified that Gumm "would continue to refer to [Rosales] and [Amy], and [Jane] specifically had asked not to mention either one of them," concluding that "[e]verything was still fresh to her."

Angela Martinez, an investigator with the Victoria County Sherriff's Office, also testified on behalf of the State. Martinez generally described her experience in investigating allegations of sexual abuse. Martinez testified that, based on her training

3

and experience, child sex abuse complainants could have a delayed outcry where they "live with the offender and [do] not want to get them in trouble," "[t]hey could be afraid of the offender and not want to get hurt," or the "offenders could threaten to hurt their family members if they make an outcry." Martinez also explained the process of "grooming," without objection. According to Martinez,

> Grooming is the process in which the offender gets the victim to be more comfortable with them, being that initially they might touch them on the knee or they might touch them on the thigh. If they don't get a strong reaction from the victim, then they will continue to go to maybe vaginal touch or a touch on the boobs. Also, buying them things would also be a part of grooming; buying them gifts, buying them toys, cell phones, various things, [including drugs].[2]

As to the allegations against Rosales, Martinez testified that she became involved shortly after a police report was taken on September 7, 2020. According to Martinez, given the nature of the allegations, which she affirmed involved "sexual abuse" by "touching," Martinez coordinated for Jane to have a forensic interview with Megan Burow at the Hope Advocacy Center. During this portion of her testimony, the prosecutor attempted to elicit certain information about the nature of the allegations against Rosales, to which defense counsel objected. First, the prosecutor asked Martinez, "[w]hat was your general understanding of the allegation that was made?" Defense counsel objected, and the objection was sustained. A short while later, the following exchange occurred:

| [Prosecutor]: | Without getting into what was said, do you know whether or not an outcry of abuse was made in that interview? |
| [Martinez]: | Yes. |

---

[2] Martinez agreed with the prosecutor that "supplying drugs to a victim or somebody that they wanted to groom" could be an example of grooming.

4

| [Prosecutor]: | . . . [W]as there more than one category of abuse that was disclosed? |
| --- | --- |
| [Martinez]: | Yes, sir. |
| [Defense Counsel]: | Judge, again, I'm going to object. This is all going to be based on hearsay. If she's viewing the interview, then they can call [Burow] to testify; but this is all hearsay. |
| [Trial Court]: | It would be on the effect of the statement on the listener, not for the truth of the matter asserted. |

After overruling defense counsel's objection, Martinez testified that the specific categories of abuse she was investigating were "[a]ggravated sexual assault and indecency by contact." Martinez clarified that the assault related to "[p]enetration" of the "vagina." Then the following exchange occurred:

| [Prosecutor]: | Did you get any information as to the location of where these instances of abuse took place? |
| --- | --- |
| [Martinez]: | Yes, sir. |
| [Defense Counsel]: | Judge. I'm going to object. This is not only not relevant, but it's also repetitive of the first two witness[es'] testimony. There's nothing new here and it's all based on hearsay and we would object. |

The trial court overruled defense counsel's objection and permitted Martinez to testify as to the exact location of the trailer home in Bloomington where the incidents of sexual abuse occurred. Martinez concluded her testimony by explaining the decision to charge Rosales.

Megan Burow of the Hope Advocacy Center testified that she conducted a forensic interview of Jane on September 11, 2020. Burow generally explained her experience and training related to conducting forensic interviews. She explained to the jury the barriers to

disclosures of sexual abuse, such as a non-abusing parent's relationship to the abuser, and other children being present in the home. Burow also generally explained how grooming or coaching could impact a forensic interview. Burow explained that the process of "grooming" "occurs over time where the person does different things or treats one child in the home differently than maybe the others to gain that trust," and that often "it includes gifts, getting to [d]o special things, or having secret jokes, things of that nature."

According to Burow, Jane reported "two times" that Rosales touched her under the clothes; Jane "referenced several time[s] that he had touched her breasts over the clothes"; and reported that "there was one day he laid her down on his and her mom's bed," "pulled down her shorts," "moved her underwear to the side," "and used his mouth" on her private area. Jane also reported that Rosales touched her while she was showering, including touching her private area and breasts. Jane reported that in touching her, Rosales used his "hand" and his "mouth," stating that "whenever he was in the bedroom, his mouth touched her private part; but whenever he was in the shower, his mouth touched her breast." Burow also testified that in accordance with best practices, she interviewed two of Jane's siblings on the same date, neither of whom reported any allegations of sexual abuse.

Jane testified that while living at the trailer home in Bloomington with Amy and Rosales, Rosales made "weird comments, inappropriate touching, and then it just escalated." As to the comments, Jane testified that Rosales "would compare [Jane] to [her] mom or say just like the kind of clothes I was wearing . . . ." She affirmed that Rosales would comment on her body, particularly her breasts, and would compare her breasts to her mother's. She testified that he told her "[l]ike [']that's how [Amy's] were when she was

6

your age and when I met her,['] something like that." Jane testified that she was "[l]ike 12" at the time these comments were made.

As to the inappropriate touching, Jane testified that she "could be in the kitchen, washing dishes. He'd pass by and like slap my butt." Also, when she would be sitting on the couch, "he would walk out the door and he would, like, slide his hand across my breasts or grab them." Jane affirmed that Rosales touched her on her "private area" on two occasions, "[o]nce in his bedroom and once in – in the restroom." As to bedroom incident, Jane testified that when she was twelve years' old she was sitting on the bed while Rosales was sitting on a nearby green chair. Jane testified that her mother was likely at work as she worked at 7-Eleven while Rosales was unemployed. Jane and Rosales were "talking and smoking" marijuana. Jane affirmed that they would "smoke marijuana together often," and that he would supply it. She further testified that on separate occasions Rosales gave her "cocaine and pills."

While Jane and Rosales were smoking in the bedroom, "he had laid [her] down" on the bed. Jane testified that "he pushed me back and [she] laid down and [she] would just freeze." She described that she felt "[l]ike something was holding [her] down, you know." After laying Jane down, Rosales "had lifted up [her] legs, and he had moved [her] shorts to the side." Rosales then "put his mouth to [her] private area." Jane testified that Rosales's mouth touched both the "inside" and "outside" of her private area. As Rosales did this, Jane testified that she felt "confused, disgusted, just frozen."

As to the restroom incident, Jane testified that Rosales touched her on a separate occasion while her mother was at work. Jane testified that Rosales had given her cocaine and told her that a hot shower would prevent her nose from burning. While showering,

Rosales entered the restroom and "had opened the curtain, and . . . he started touching [her] with his hands." Jane testified that Rosales touched her "breast and [her] private area," her "vagina." Rosales touched Jane's private parts "outside and inside." According to Jane, while she was in the shower he also touched her "boobs and [her] butt," "[h]e touched everything, basically." Rosales told Jane that "just like, [']it's okay,['] stuff like that," and justified his actions by noting that if the touching "was normal then, it should be normal now." Jane also testified about a separate incident that took place in the restroom. According to Jane, she was showering and she "stepped out and he was . . . sitting down or standing up, with just like his lower body naked." Seeing Rosales, Jane became "frozen up" and she recalled him telling her something "along the lines like, [']g]et used to this['] or, you know, [']t]his is normal.[']" Jane further testified that she was generally scared of Rosales, affirming that he would "lash out or have acts of violence" directed toward Amy, and that she was "scared . . . of the physical violence living in that home[.]"

Jane testified that the first adult to whom she disclosed the abuse was Linda. Jane had called Linda and asked to stay over at her father's house for the weekend. After telling Linda and John about the abuse, Jane had to be hospitalized because she overdosed on Benadryl. Jane testified that after telling Linda about the abuse, "it felt like no one believed [her]," and that her brother also did not believe her and called her a "liar" and "stupid." Amy also did not believe her, saying "[']w]hy would you do that, why are you lying,['] and stuff like that."

Defense counsel attempted to discredit Jane's version of events and attempted to elicit inconsistences between Jane's testimony and her prior statements regarding the abuse allegations. Defense counsel also clarified that Jane had not spoken to Amy "for

8

almost three years," and implied that Jane may have exaggerated or fabricated her story to ensure that she could live with John and Linda. Defense counsel also focused on an issue brought up during direct examination, namely, that Jane had previously accused a cousin of sexual abuse, but she decided to drop the charges. According to Jane, she had been sexually abused by her cousin when seven years' old. Jane testified that, after juvenile charges were filed, she "was forced to" drop the charges by Rosales and Amy.

At the close of evidence, the jury returned a verdict of guilty as to both counts and sentenced Rosales to forty years' imprisonment as to count one and twenty years as to count two, which sentences the trial court ordered to run consecutively. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

Rosales claims that sufficient evidence "was not introduced by the State that [he] had the requisite mens rea as it relates to either count of the indictment."[3] In particular, Rosales claims that

> A scintilla of evidence was not introduced by the State that [Rosales] acted with the intent to arouse or gratify [his] sexual desires. Likewise, a scintilla of evidence was not introduced that [Rosales] intentionally and knowingly caused [Rosales's] sexual organ to contact the alleged victim. As such, this Court should find that there was legally and factually insufficient evidence to support the jury's verdict, and the conviction of [Rosales] should be reversed and a verdict of acquittal entered.

### A.    Standard of Review & Applicable Law

"Under the Due Process Clause, a criminal conviction must be based on legally

---

[3] Rosales argues that the trial court abused its discretion in denying defense counsel's motion for directed verdict. We construe this argument as a challenge to the legal sufficiency of the evidence. *See Johnson v. State*, 682 S.W.3d 638, 649 (Tex. App.—Tyler 2024, pet. ref'd) ("A challenge to the denial of a motion for directed verdict is essentially an evidentiary sufficiency challenge." (citation omitted)).

9

sufficient evidence." *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). Evidence is legally sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Joe v. State*, 663 S.W.3d 728, 731–32 (Tex. Crim. App. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under a legal sufficiency review, we view the evidence in the light most favorable to the verdict, while recognizing that "[t]he trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts." *Id.* at 732; *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (noting that "the reviewing court is required to defer to the jury's credibility and weight determinations"). We need not "disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt," but rather we consider "only whether the inferences necessary to establish guilt are reasonable based on the cumulative evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (citations omitted).

We measure the evidence produced at trial against the essential elements of the offense as defined by a hypothetically correct jury charge. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). The "law" as "authorized by the indictment" includes the statutory elements of the

10

offense as modified by the charging instrument. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

The uncorroborated testimony of a child victim alone is sufficient to support a conviction for a sexual offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1) (providing that a conviction "under Chapter 21" or "Section 22.021" "is supportable on the uncorroborated testimony of the victim of the sexual offense," without requiring the victim to inform another person if the victim is seventeen years of age or younger); *see Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's testimony alone was sufficient to establish the element of penetration beyond a reasonable doubt).

Lastly, when "determining the legal sufficiency of the evidence to show an appellant's intent," even where "the record supports conflicting inferences, we 'must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.'" *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd) (quoting *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991)). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Id*. § 6.03(b). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware his conduct is reasonably certain to cause the result." *Id*.

Because the accused's mental state is usually "[c]oncealed within his own mind,

11

intent and knowledge are most often proven through circumstantial evidence surrounding the crime." *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998). A jury may infer knowledge or intent from any facts that tend to prove their existence, including the acts, words, and conduct of the accused; the method of committing the crime; and the nature of the wounds inflicted. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *see Bazanes*, 310 S.W.3d at 40 (noting that the specific intent required for indecency with a child "may be inferred from a defendant's conduct, his remarks, and all of the surrounding circumstances," "[a]n oral expression of intent is not required," and "the conduct itself is sufficient to infer intent" (citations omitted)).

## B.    Discussion

As to aggravated sexual assault of a child, here, a hypothetically correct jury charge would require the State to prove beyond a reasonable doubt that Rosales, regardless of whether he knew the age of Jane, a child, (1) intentionally or knowingly (2) caused the sexual organ of Jane to contact[4] the mouth of Rosales, TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), and (3) Jane was younger than fourteen years of age. *Id*. § 22.021(a)(2)(B). As to indecency with a child, a hypothetically correct jury charge would require the State to prove beyond a reasonable doubt that Rosales (1) with the intent to arouse or gratify his sexual desire, (2) committed an act involving any touching by

---

[4] Based on Jane's testimony, the trial court granted the State's request to include language in the abstract portion of the jury charge defining sexual assault as the "penetration of the sexual organ of a child by any means," *see* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), in addition to the definition of assault by "contact." *Id*. at § 22.021(a)(1)(B)(iii). This language was not reflected in the corresponding application paragraph of the jury charge. Rosales did not object when the State requested this language and does not argue that this language in the jury charge supports any of his claims on appeal. Accordingly, any complaint based on this language has been waived. *See* TEX. R. APP. P. 38.1(i); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) ("An appellate court has no obligation to construct and compose an appellant's issues, facts, and arguments with appropriate citations to authorities and to the record." (cleaned up)).

Rosales, including touching through clothing, of any part of the genitals of Jane, (3) a child younger than seventeen years of age. *See id*. § 21.11(a)(1), (c)(1).

The jury was presented with circumstantial evidence, including Rosales's words and actions, which support a rational inference of the requisite mental state for each offense. *See Smith*, 965 S.W.2d at 518; *Hart*, 89 S.W.3d at 64. For example, Jane testified that Rosales made "weird" comments to her about her body and breasts, including comparing her breasts to Amy's. *See, e.g., Cervantes v. State*, 594 S.W.3d 667, 673 (Tex. App.—Waco 2019, no pet.) (finding sufficient evidence of the requisite intent for indecency with a child where appellant "made inappropriate sexual comments about female family members," among other facts). Jane testified that Rosales made statements while committing the abuse, including telling her that his touching her naked body, including her breasts and vagina, was "normal." Jane also testified about several instances of abuse in addition to the two described above. Jane testified that Rosales would "slap [her] butt" while she would wash dishes, and that he would "slide his hand across my breasts or grab them" while she would sit on the couch in the living room. She further testified as to a separate bathroom incident where she exited the shower and saw Rosales there with his "lower body naked," and she recalled him telling her something "along the lines like, ['g]et used to this['] or, you know, ['t]his is normal.[']" The jury was also presented with evidence that Rosales was "grooming" Jane, including by providing her drugs. *See Morris v. State*, 361 S.W.3d 649, 666 (Tex. Crim. App. 2011) ("Grooming evidence is, at its most basic level, testimony describing the common behaviors of child molesters and whether a type of evidence is consistent with grooming."). This evidence supports the requisite mental state element for each offense. *See Smith*, 965 S.W.2d at

13

518; *Bazanes*, 310 S.W.3d at 40.

A review of the record demonstrates that Jane's testimony in this case was sufficient to sustain Rosales's convictions, including the requisite mental state for each offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1). Even if Rosales were able to point to some conflicts in the record pertaining to the requisite mental states, we must presume that the jury resolved any conflicts in favor of its verdict. *See Bazanes*, 310 S.W.3d at 40; *see also Totten v. State*, No. 05-22-01215-CR, 2024 WL 358116, at *3 (Tex. App.—Dallas Jan. 31, 2024, no pet.) (mem. op., not designated for publication) (finding sufficient evidence to support aggravated sexual assault where child victim testified that she "did not know if the penetration was accidental or intentional," and where the appellant testified and "vehemently denied he had touched [victim]'s genitals," reasoning that "[t]he jury, as the sole judge of the credibility of the witnesses, was entitled to disbelieve appellant's testimony"). We overrule Rosales's first issue.

### III. HEARSAY OBJECTIONS

Rosales argues that he is entitled to a new trial because the trial court admitted inadmissible hearsay statements over his objections. Rosales points to two separate instances of hearsay: (1) Martinez's testimony as to "the two specific categories" of abuse she was investigating based on Jane's allegations, "[a]ggravated sexual assault and indecency by contact," which involved "[p]enetration" of "[t]he vagina"; and (2) Martinez's testimony providing the precise address of "the location of where these instances of abuse took place."

### A. Standard of Review & Applicable Law

We review the trial court's exclusion of evidence under an abuse of discretion

standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Therefore, we will uphold a trial court's ruling on admissibility if it is within the "zone of reasonable disagreement." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Generally, hearsay is not admissible unless permitted by statute, the rules of evidence, or by some other rule prescribed under statutory authority. *Id.* R. 802. The erroneous admission of a hearsay statement constitutes non-constitutional error that must be disregarded unless the error affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *see* TEX. R. APP. P. 44.2(b). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023). An appellate court should not overturn a criminal conviction for non-constitutional error "if the appellate court, *after examining the record as a whole*, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Barshaw*, 342 S.W.3d at 93 (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)). "In considering the likelihood that the error adversely affected the jury's verdict, appellate courts should consider everything in the record, including the evidence admitted, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered with other evidence in the

case." *Eggert v. State*, 395 S.W.3d 240, 244 (Tex. App.—San Antonio 2012, no pet.) (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

"When a trial court erroneously admits hearsay, but the matter asserted by the out-of-court statement is otherwise established through other admitted evidence, no harm is done to the party challenging the hearsay." *Ellison v. State*, 494 S.W.3d 316, 328 (Tex. App.—Eastland 2015, pet. ref'd) (citing *Clay v. State*, 240 S.W.3d 895, 905–06 (Tex. Crim. App. 2007)); *see also Gibson v. State*, 595 S.W.3d 321, 327 (Tex. App.—Austin 2020, no pet.) ("In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection.").

**B.      Discussion**

Even if we were to assume that the trial court erred when overruling defense counsel's objections to the complained-of hearsay, Rosales cannot show harm because the matters asserted in the hearsay were established through other admitted evidence. *See Ellison*, 494 S.W.3d at 328. As to Martinez's testimony describing the nature of the allegations, both Burow and Jane testified to the same underlying facts detailing the abuse without objection. We do note that Martinez used the word "penetration" when describing the nature of the aggravated sexual assault allegations, even though Rosales was charged with aggravated sexual assault by "contact," and not "penetration." *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii). Even though Rosales was not charged with aggravated sexual assault by penetration, we conclude that Jane's testimony otherwise established that fact, and consequently no harm can be shown. *See Ellison*, 494 S.W.3d

16

at 328. In particular, Jane testified that Rosales's mouth touched the "inside" and "outside" of her vagina, establishing the penetration of Jane's vagina, even though he was charged with sexual assault by "contact." *See Maldonado v. State*, 461 S.W.3d 144, 149 (Tex. Crim. App. 2015) (noting that "penetration cannot physically occur in the absence of contact"); *see also Jiminez v. State*, 953 S.W.2d 293, 297 (Tex. App.—Austin 1997, pet. ref'd) (finding sufficient evidence that appellant "caused his mouth to contact [victim's] sexual organ" where the victim "testified that appellant rubbed his face against her naked genitals" and "felt his nose inside her genitals," reasoning that "a rational trier of fact could infer beyond a reasonable doubt that, when appellant rubbed his face against the complainant's genitals and penetrated them with his nose, he caused his mouth to contact her sexual organ").

As to Martinez's testimony regarding where the abuse occurred, this fact was generally established by other evidence. *See Ellison*, 494 S.W.3d at 328. Jane testified that the abuse occurred when she lived in a "trailer park" "by the train tracks" and near a "7-Eleven" in "Bloomington." Linda also affirmed that Jane had lived with Amy and Rosales in Bloomington, testifying that it was "a couple of trailers from the train tracks." Although Martinez's statement was more detailed, other than a bald assertion of harm, Rosales fails to explain how this statement had a "substantial and injurious effect or influence in determining the jury's verdict." *Cook*, 665 S.W.3d at 599; *see* TEX. R. APP. P. 38.1(i). Examining the record as a whole, especially the evidence supporting the verdict and the limited nature of the alleged error, we conclude that Rosales has failed to show the requisite level of harm necessary to warrant reversal. *See Cook*, 665 S.W.3d at 599; *Eggert*, 395 S.W.3d at 244; *Barshaw*, 342 S.W.3d at 93.

We overrule Rosales's second issue.

## VII. CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
5th day of December, 2024.

18